# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JUDICIAL WATCH, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 12-0324 (RCL)** |
| | ) | |
| **U.S. DEPARTMENT OF** | ) | |
| **TRANSPORTATION** | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Judicial Watch brings this Freedom of Information Act ("FOIA") action against defendant Department of Transportation seeking disclosure of documents passed between defendant's agency, the Federal Railroad Administration (FRA), and the California High Speed Rail Authority (CHSRA), while developing the California High Speed Rail (CHSR).

Both parties now move for summary judgment. Upon consideration of the defendants' Motion [10] for Summary Judgment, the plaintiff's Cross-Motion and Opposition [13] thereto, the defendant's Reply and Opposition [17], and the plaintiff's Reply [18] the Court will GRANT the defendant's Motion and DENY the plaintiff's motion

## I.    BACKGROUND

The CHSR is an ambitious plan to provide inter-city train service at speeds of over 200 mph from the San Francisco Bay Area and Sacramento in Northern California to Los Angeles and San Diego in Southern California. Since 2001, FRA and CHSRA have been collaborating to ensure that the CHSR meets federal and state environmental regulations. Under these regulations, agencies must assess the likely environmental impact of the proposed project, as

well as alternatives to the proposal, before carrying out major actions affecting the environment. 42 U.S.C. § 4332(C); West's Ann. Cal. Pub. Res. Code § 21002.

To accomplish this task, FRA and CHSRA have agreed to jointly develop environmental impact reports for both the program as a whole and each segment of the CHSR.  According to three Memoranda of Understanding ("MOUs") memorializing this arrangement, FRA and CHSRA are "co-lead" agencies, with FRA responsible for compliance with the federal National Environmental Policy Act (NEPA) and CHSRA responsible for compliance with the state California Environmental Quality Act (CEQA).  Def.'s Reply Supp. Mot. Summ. J. and Opposition to Pl.'s Cross-Mot Summ. J., Ex. A, Fashour Suppl. Decl. ¶ 5–9.

On January 4, 2012, Judicial Watch filed a FOIA request for

All documents, communications, and correspondence (including electronic email) transmitted between the Federal Railroad Administration and the California High Speed Rail Authority addressing or relating to the route alternatives under consideration for the proposed California High Speed Rail within Madera County and Merced County, California.  Compl. ¶ 5.

After not receiving a determination from FRA within 20 working days, Judicial Watch filed this action.  FRA then provided records responsive to the request on April 13, 2012, and May 30, 2012.  It withheld certain records, however, claiming that they were protected under the deliberative process exemption of 5 U.S.C. § 552(b)(5) ("Exemption 5").  Judicial Watch challenges the application of this exemption, claiming that communications between the CHSRA and FRA do not meet Exemption 5's threshold requirement of being "inter-agency or intra-agency."  FRA claims that they should be considered "intra-agency" under Exemption 5's "consultant corollary," which our and many other circuits have adopted.  Both parties' motions for summary judgment are now before this court.

## II.    LEGAL STANDARD

### A.    Summary Judgment under FOIA

Courts must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986).  When considering motions for summary judgment, courts must draw all reasonable inferences in a light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "[I]f material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available."  *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988).

Under FOIA, agencies bear the burden of justifying non-disclosure of any requested records.  5 U.S.C. § 552(a)(4)(B).  Consistent with FOIA's "basic purpose" of "ensur[ing] an informed citizenry, . . . needed to check against corruption and to hold the governors accountable to the governed,"  agencies may only withhold responsive records if they fall under one of nine carefully structured statutory exemptions.  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–21, 42 (1978).  Courts are to construe each of these exemptions narrowly.  *Dep't of the Interior v. Klamath Water Users*, 532 U.S. 1, 8 (2001).

### B.    Exemption 5

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption protects from disclosure materials that would ordinarily be privileged in a civil discovery context.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49 (1975).  Courts have incorporated within this exemption the "deliberative process"

(or "executive") privilege, which shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dept. of the Interior v. Klamath Water Users*, 532 U.S. 1, 8 (2001).  This privilege primarily serves three purposes: (1) to encourage policy makers to speak candidly with each other without fear that their choice of language will be subject to public inspection; (2) to prevent premature release of proposed policies before they are adopted; and (3) to protect against the public confusion and spread of erroneous information that might result from disclosing rationales that were not ultimately the grounds for the agency's action.  *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (citing *Jordan v. Dep't. of Justice*, 591 F.2d 753, 773 (D.C. Cir. 1978)).

The language of exemption 5 necessitates two separate inquiries in relation to the deliberative process privilege: (1) are the withheld records "inter-agency or intra-agency"? and, if so, (2) do the records form part of the the agency's deliberative process?  This case is entirely concerned with the first inquiry, specifically, whether the communications between FRA and CHSRA can constitute "intra-agency" memoranda.[1]

Under a strict reading, "intra-agency" memoranda would only include documents passed between employees of the same federal agency, not documents exchanged with outside parties. *Klamath*, 532 U.S. 1, 9 (2001) (citing *Dep't of Justice v. Julian*, 486 U.S. 1, 18 (1988) (Scalia, J., dissenting)).  Early on, however, our circuit chose to depart somewhat from the letter of the law in favor of a more functional approach to Exemption 5.  Recognizing that the purpose of the

---

[1] The defendant concedes that the communications are not "inter-agency."  For the purposes of FOIA, "agency" is defined as "each authority of the Government of the United States," (5 U.S.C. § 551(1)) including "any executive department, military department, Government corporation, Government-controlled corporation, or other establishment in the executive branch of the Government . . ., or any independent regulatory agency."  5 U.S.C. § 552(f); *Klamath*, 532 U.S. at 9.  Consequently, "inter-agency memorandums" would only include documents passed between two federal entities of a nature described above, not a memorandum passed between a state agency and a federal agency.  *People for the Am. Way Found. v. Dep't of Educ.*, 516 F. Supp. 2d 28, 36 (D.D.C. 2007).

exemption was to promote the quality of agency policy decisions and that often these policy decisions were best made by incorporating the advice of outside experts, our circuit developed a "consultant corollary" whereby communications with temporary consultants would be considered "intra-agency" for the purposes of Exemption 5.  *E.g. CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1162 (D.C. Cir. 1987) ("[F]ederal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unraveling their knotty complexities."); *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971) ("The Government may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity.").  While such a rendering departs from the general rule that courts should construe FOIA exemptions narrowly, it best captures the exemption's purpose of protecting the government's deliberative process when that process involves outsiders.  *Dep't of Justice v. Julian*, 486 U.S. 1, 18 n.1 (1988) (Scalia, J., dissenting) (explaining that expanding "intra-agency" to include advice from consultants or non-agency governmental units is "textually possible and much more in accord with the purpose of the provision.")

This more flexible approach to the "intra-agency" requirement set in motion a line of cases in which our circuit established the reach of the consultant corollary.  In *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980), the court stated, "[w]hen an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency," the record was an "'intra-agency' memorandum for the purposes of . . . Exemption 5." *Id.* at 790.  Based on this rule, therefore, the court held that Senators' responses to questionnaires sent by the Department of Justice were "intra-agency" memoranda even though the Senators

could not fairly be considered an "agency" under FOIA, nor were they within the Department of Justice. *Id.* at 789.

In *CNA Financial Corporation v. Donovan*, 830 F.2d 1132 (D.C. Cir. 1987) and *Formaldehyde Institute v. Department of Heath and Human Services*, 889 F.2d 1118 (D.C. Cir. 1989) the court expanded the rule further. Rather than limiting "intra-agency" to include only those communications that were solicited by the agency, it disregarded this element from *Ryan* and held that any document that aided an agency's decision-making process would meet the intra-agency requirement:

> Whether the author is a regular agency employee or a temporary consultant is irrelevant; the pertinent element is the role, if any, that the document plays in the process of agency deliberations. If information communicated is deliberative in character it is privileged from disclosure, notwithstanding its creation by an outsider. *CNA Fin. Corp.*, 830 F.2d at 1161–62; *accord Formaldehyde Inst.*, 889 F.2d at 1122.

The D.C. Circuit reiterated this position in *Public Citizen v. Department of Justice*, 111 F.3d 168 (D.C. Cir. 1997) by considering communications between former Presidents and the National Archives and Records Administration to be "intra-agency." *Id.* at 170. The court emphasized that the fact that the former presidents were not within any agency was irrelevant because as long as the communications aided the agency's deliberative process, the communications were "intra-agency" for the purposes of Exemption 5. *Id.* It also noted that two additional circumstances made application of the intra-agency label "peculiarly appropriate": (1) the outside parties in this case were not normal citizens but former presidents who carry presidential privilege even beyond their tenure; and (2) the relationship between the agencies and the presidents was explicitly mandated by the Presidential Records Act, which required the agencies to communicate with the presidents concerning whether to make presidential records public. *Id.*

As Judge Tatel has noted, the trouble with the standard laid down by these cases was that it effectively skipped past the threshold "inter-agency or intra-agency" inquiry required by Exemption 5. *Nat'l Inst. of Military Justice v. Dep't of Defense*, No.06-5242, 2008 WL 1990366, at *1 (D.C. Cir. 2008) (en banc denial of rehearing) (per curiam) (Tatel, J., concurring). By including all documents that aided the agency's deliberative process as "intra-agency," the court was really only making the second inquiry, which already asks whether the documents are part of the agency's deliberative process. *Id.* Thus, the rule seemingly drained "intra-agency" of any independent significance. *Id. But cf. Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990) (denying "intra-agency" classification to communications from an agency to a non-agency because the communications only aided the *non-agency's* deliberative process, not the agency's).

In *Department of the Interior v. Klamath Water Users Protective Association*, 531 U.S. 1 (2001), however, the Supreme Court rescued the threshold requirement by requiring courts to give "independent vitality" to the words "inter-agency or intra-agency." *Id.* at 12. There, the Court denied "intra-agency" classification to communications between a Native American tribe and the Department of the Interior concerning an irrigation plan in which the tribe had a self-interest in acquiring a larger allocation of water. *Id.* While it acknowledged the circuit courts' expansion of "intra-agency" to include communications with non-agency consultants, the Court declined to rule on whether this practice was acceptable. *Id.* Instead, it defined an outer bound––"intra-agency" could not be stretched so far as to include agency communications with non-agencies that had an outside interest in acquiring a government benefit that was adverse to the interests of competitors. *Id.* at 12 & n.4.

The court observed that the types of consultant communications circuits had commonly included in the exemption were with consultants that acted substantially like the agency's own personnel, being obligated only to "truth and [their] sense of what good judgment calls for." *Id.* at 11. "The tribes, on the contrary, necessarily communicate[d] with the [agency] with their own, albeit entirely legitimate, interests in mind." *Id.* at 12. The court did not rule on whether having outside interests was by itself sufficient to exclude a consultant from Exemption 5's reach, however. Instead it explained that

> [T]he dispositive point is that the apparent object of the Tribe's communications is a decision by an agency of the Government to support a claim by the Tribe that is necessarily adverse to the interests of competitors. Since there is not enough water to satisfy everyone, the Government's position on behalf of the Tribe is potentially adverse to other users, and it might ask for more or less on behalf of the Tribe depending on how it evaluated the tribal claim compared with the claims of its rivals. *Id.* at 14.

Consequently *Klamath* held that no matter how far "intra-agency" can be stretched, it cannot be stretched so far as to include communications with interested parties seeking a government benefit at the expense of other applicants.

While *Klamath* put an outer bound on the reach of Exemption 5 and mandated that courts give weight to the "inter-agency or intra-agency" requirement, it does not entirely undermine our circuit's pre-*Klamath* precedent.[2] I cannot prune our circuit's rule further than the Supreme Court requires. While this Court can no longer merge the threshold requirement with the deliberative process requirement and thereby disregard it, this Court is also not at liberty to give it more than the minimal attention that *Klamath* demands. Our circuit has allowed any

---

[2] The Court itself noted how our circuit's decisions in *Ryan* and *Public Citizen* arguably stretched beyond *Klamath* because the outside entities in those cases likely pursued their own interests when communicating with the agencies. *Klamath*, 532 U.S. at 12 n.4. Ultimately, however, the Court declined to decide whether those cases would now turn out differently. *Id.*

communication that aids the agency's deliberative process to be protected as "intra-agency."[3] *Klamath* only modifies this by requiring that we not protect communications with interested parties seeking a government benefit that is adverse to others seeking that benefit.

## III.  ANALYSIS

Combining these cases produces the following rule in our circuit:  When communications between an agency and a non-agency aid the agency's decision-making process and the non-agency did not have an outside interest in obtaining a benefit that is at the expense of competitors, the communication must be considered an intra-agency communication for the purposes of FOIA Exemption 5.  *See Military Justice*, 512 F.3d at 680–85 (D.C. Cir. 2008) (treating *Klamath* as a supplement to its prior rule, not an abrogation of it); *Lardner v. Dep't of Justice*, No. Civ.A.03-0180, 2005 WL 758267, at *1 (D.D.C. Mar. 31, 2005) (same).  When this rule is applied to the case at hand, the court has no other option but to consider the documents "intra-agency" and protect them from disclosure.

The plaintiff does not contest that the documents at issue satisfy the first element.  The communications between FRA and CHSRA aided FRA's decisions as to which route alternatives best complied with NEPA.  Therefore, considering the withheld documents to be intra-agency

---

[3] The plaintiff maintains that our circuit's position on the intra-agency requirement is not so expansive.  It points to *Ryan* and the circuit's recent holding in *Nat'l Institute of Military Justice v. DOD*, 512 F.3d 677 (D.C. Cir. 2008) for the proposition that communications need to be solicited by the agency to qualify for protection as "intra-agency."  I do not think our circuit adopts so limited a rule however.

Indeed, *Military Justice* mirrored the earlier rule from *Ryan* by stating that documents "submitted by non-agency parties *in response to an agency's request for advice[]* are covered by Exemption 5."  *Id.* at 681 (emphasis added).  In that case, the Department of Defense requested the advice of several non-agency lawyers to help establish military commissions to try suspected terrorists.  *Id.* at 678–79.  The court characterized these communications as "intra-agency" because (1) they aided the agency's decision making, (2) the agency solicited the communications, and (3) the lawyers were not seeking outside interests at the expense of others—i.e., the *Klamath* requirement.  *Id.* at 680–83.

Nothing in *Military Justice* or *Ryan* indicated that agency solicitation was dispositive, however.  Therefore, I have no basis for concluding from either case that agency solicitation is a *necessary* element for "intra-agency" classification, such that merely (1) aiding agency decision-making and (3) complying with *Klamath* is not sufficient.  On the contrary, this court must comply with the circuit's other precedent—i.e., *CNA Financial Corp.*, *Formaldehyde Inst.*, and *Public Citizen*, which do not seem to require agency solicitation—and only modify those holdings to the extent required by *Klamath*.

fully complies with our circuit's pre-*Klamath* precedent, and the court needs only to comply with *Klamath* by analyzing the remaining two elements.[4]

*Klamath* tells us that intra-agency communications cannot include communications from a party seeking outside interests at the expense of other applicants.[5]  The plaintiff asserts that CHSRA has outside interests because it is seeking tens of billions of dollars of federal funds for this project as well as all of the economic and social benefits that will come to the state of California as a result of the project's approval at the federal level.   Additionally, CHSRA is responsible for ensuring that the reports comply with state regulations, which, to the degree that these regulations do not overlap with NEPA, arguably represent an interest independent from FRA's interests.   The plaintiff argues that the state's interest in obtaining federal assistance is

---

[4] While I do not read our circuit's precedent as mandating agency solicitation for a communication to be "intra-agency," there is some support for finding that the communications here were, nevertheless, agency solicited. FRA actively sought CHSRA's assistance in meeting NEPA requirements, as memorialized in the three MOUs. Of course, CHSRA also could be said to have "solicited" FRA for its assistance in complying with state requirements. The fact that both agency and non-agency may have mutually "solicited" each other's assistance, however, does not obscure the fact that agency solicitation nevertheless occurred. Thus, even if *Ryan* and *Military Justice* necessitate that the court look at whether FRA solicited these documents, the court believes that FRA did.

[5] Only a few cases have dealt with how *Klamath* applies to agency communications with separate governments, as California is here, and whether those governments have interests sufficiently aligned with the federal agency's interests so as to be included in the consultant corollary. In one case, this court denied application of the "intra-agency" label to communications between the Federal government and a foreign government in the course of trade negotiations.  *Center for International Environmental Law v. Office of the U.S. Trade Representative*, 237 F.Supp.2d 17 (D.D.C. 2002).  There, the court recognized that even though the communications were to the mutual benefit of both governments, the foreign government had too strong of an interest in advantaging its own position in the trade negotiations over the United States' position. *Id.* at 29.

For agency communications with state governments, this court's cases have yielded mixed results. Compare *Citizens for Responsibility and Ethics in Washington v. DHS*, 514 F. Supp. 2d 36 , 44–45 (D.D.C. 2007) (considering communications between FEMA and state officials to coordinate evacuation plans during Hurricane Katrina to be "intra-agency") *with People for the Am. Way Found. v. U.S. Dep't of Education*, 516 F. Supp. 2d 28, 31–40 (D.D.C. 2007) (denying "intra-agency" categorization to communications between the Department of Education and the D.C. Mayor's Office because the project was "co-regulatory" and the Mayor had distinct interests related to satisfying constituent demands).  Courts outside of our circuit have also not spoken uniformly on the subject.  *See Grand Cent. P'Ship v. Cuomo*, 166 F.3d 473, 484 (2nd Cir. 1999) (denying "intra-agency" label to communications with state councilmembers but explicitly declining to decide whether such communications made in the context of a "federal-state partnership" would be "intra-agency"); *General Elec. Co. v. E.P.A.*, 18 F. Supp. 2d 138 (D.Mass. 1998) (considering data to be "intra-agency" when the federal agency asks the state agency for them and uses the data in its deliberations); *cf. Dep't of Justice v. Julian*, 486 U.S. 1, 18 n.1 (1988) (Scalia, J., dissenting) (regarding memoranda as "intra-agency" when they have "been received by an agency, to assist it in the performance of its own functions, from a[n] . . .  employee or officer of *another governmental unit* (not an agency) that is authorized or required to provide advice to the agency." (emphasis added)).

adverse to competitors' interests because federal funds are limited in nature and disbursing them to California necessarily means that other parties will not receive them.

The court finds this reasoning weak.  First, while CHSRA arguably had interests that were distinct from FRA's interests, the benefits it sought on behalf of California are too remote from its communications with FRA and from the decision FRA was making.  In *Klamath*, the tribe's communications directly advocated for the benefits it sought from the project and the government's decision directly concerned whether to dispense those benefits.  Here, CHSRA's communications do not directly advocate for the benefits California seeks from the project. They merely assist FRA to meet its obligations under NEPA.  Moreover, FRA's deliberative process did not concern whether to grant the benefits California seeks, it concerned what route alternatives would leave the least environmental impact.

The connections between CHSRA's interests, its communications with FRA, and FRA's deliberative process might not be too remote if the fate of the high-speed rail project somehow directly hinged on FRA's decisions under NEPA.  For example, if California was at serious risk of being found unable to comply with NEPA, no matter what routes were chosen, and might, as a result, lose continued federal assistance, CHSRA's interests in retaining such assistance, its communications regarding NEPA compliance, and FRA's deliberative process under NEPA would have been much more closely related, and much more similar to the situation in *Klamath*. This does not seem to have been the case, however.

Secondly, the benefits CHSRA sought do not appear to have been adverse to other parties' interests.  Other states were not vying for FRA to support their individual high-speed rail projects over California's.  That scenario would be analogous to *Physicians Committee v. National Institute of Health*, 326 F.Supp.2d 19 (D.D.C. 2004), where intra-agency status was

denied to an application for an agency grant. Here, however, there is no evidence of a competitive application procedure and no indication that the communications of which the plaintiff seeks disclosure might somehow have persuaded FRA to choose California as the object of its assistance over other competitors.

As a final note, the court observes that CHSRA and FRA's relationship was formed pursuant to statute, which makes this case somewhat analogous to *Public Citizen*. NEPA requires federal agencies to work "in cooperation with [s]tate and local governments." 42 U.S.C. § 4331(a); *see also* 40 C.F.R. § 1500.2 (placing NEPA obligations on federal agencies). Similarly, the court in *Public Citizen* drew support for finding communications "intra-agency" from the fact that the communications were required under the Presidential Records Act. 111 F.3d at 170. Therefore, when a relationship between an agency and a non-agency is presumed under statute, courts have even greater support for protecting the resulting communications.

## III.   CONCLUSION

In summary, the Court must consider communications between FRA and CHSRA intra-agency memoranda for the purposes of Exemption 5 because they aided the agency's decision making process and protecting them would not violate *Klamath*. Because the plaintiff does not contest any other aspect of the application of this exemption, the court finds that defendant has met its obligations under FOIA, and its motion for summary judgment will be GRANTED.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on June 24, 2013.